UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL D.

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C20-6016-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1967.[1] Plaintiff has at least a high school education and previously worked as prep cook, garment sorter, sandwich maker, and stores laborer. (AR 34, 250.) Plaintiff filed applications for DIB and SSI on October 2, 2017, alleging disability beginning

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

September 1, 2000. (AR 215–26.) The applications were denied at the initial level and on reconsideration. On April 18, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). (AR 42–94.) At the hearing, Plaintiff amended the alleged onset date of disability to September 5, 2017, and withdrew his application for DIB. (AR 47.)

On November 15, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 18–41.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 10, 2020 (AR 1–7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 24.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: schizoaffective disorder (bipolar type); post-traumatic stress disorder (PTSD); borderline personality disorder; and polysubstance abuse disorder. (AR 24) The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: hypertension, obesity, and gastritis. (AR 25.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 25–27.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> He can perform simple routine repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and few, if any, workplace changes. He can have no contact with the public. He can have occasional superficial contact with co-workers that does not involve team tasks.

(AR 27.) With that assessment and with the assistance of a VE, the ALJ found Plaintiff capable of performing his past relevant work as garment sorter and stores laborer. (AR 34.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national

ORDER
PAGE - 3

economy. Although the ALJ found Plaintiff capable of performing past relevant work, with the assistance of a VE, the ALJ also found Plaintiff capable of performing other jobs, such as work as automobile dealer, truck driver helper, and warf tender. (AR 34–35.) The ALJ concluded that Plaintiff was not disabled from September 5, 2017 through the date of the decision. (AR 35.)

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the medical evidence, (2) failing to properly evaluate Plaintiff's testimony, and (3) improperly determining Plaintiff's RFC and basing the step four and step five findings on an erroneous RFC assessment. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## 1. Medical Opinions

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[2] 20 C.F.R. § 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id.* at § 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also*

---

[2] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

*Zhu v. Comm'r of Social Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the 2017 regulations). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A.  <u>Dr. Terilee Wingate, Ph.D. and Dr. Dana Harmon, Ph.D.</u>

Dr. Wingate completed a psychological evaluation for Plaintiff on September 8, 2017. (AR 1314–32.) Dr. Wingate opined that Plaintiff had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance without special supervision; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions. (AR 1316.) Dr. Wingate further opined that Plaintiff had moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; adapt to changes in a routine work setting; ask simple questions or request assistance; communicate and perform effectively in a work setting; and set realistic goals and plan independently. (AR 1316.)

Dr. Harmon reviewed Dr. Wingate's opinion in September 2017 for the Department of Social and Health Services and opined that Dr. Wingate's severity ratings "seem realistic, if perhaps overly negative." (AR 1545.) Dr. Harmon opined that "all the information in [Dr. Wingate's] referral is based just on [Plaintiff's] self-report" and that Dr. Wingate's ratings "appear to overstate [Plaintiff's] self-report on the Beck questionnaires and the degree of impairment he showed on the MSE testing." (AR 1545.) Dr. Harmon stated that it would be helpful to have more information, such as treatment, medical, or Department of Corrections (DOC) records, or objective mental health testing. (AR 1545.) Additionally, although Dr. Harmon affirmed the limitations

ORDER
PAGE - 5

1   opined by Dr. Wingate, Dr. Harmon opined that she "would defer to the diagnoses, severity ratings
2   and likely duration that are reported in [Plaintiff's] DOC records." (AR 1545.)

3          The regulations require the ALJ to articulate the persuasiveness of each medical opinion
4   and explain how the ALJ considered the supportability and consistency factors for that opinion.
5   20 C.F.R. § 416.920c(a)–(b). The ALJ found the opinion of Dr. Wingate partially persuasive,
6   finding that, although Dr. Wingate's assessment regarding Plaintiff's "mild to moderate limitations
7   is generally consistent with the overall medical evidence of record . . . [Dr. Wingate's] opinion
8   regarding [Plaintiff's] marked limitations appears to be based primarily on the claimant's
9   subjective reports, as it is not consistent with the record." (AR 32.) The ALJ found that evidence
10  showed Plaintiff was stable on his medication throughout his incarceration and during his
11  evaluation, and that Plaintiff "is able to perform activities such as helping his sister's business,
12  cooking simple meals, performing household chores and yard work, socializing with family, and
13  taking his dogs to the park," which activities show a level of functioning contradictory to Dr.
14  Wingate's opinion. (AR 32.) The ALJ found Dr. Harmon's opinion "somewhat persuasive" for the
15  same reasons as discussed for Dr. Wingate. (AR 33.) Additionally, the ALJ noted that, in line with
16  Dr. Harmon's assessment, Plaintiff's DOC records "show that he was generally stable during his
17  incarceration with consistent mental health treatment," which "stabilization continued after his
18  release with ongoing treatment." (AR 33.)

19         Plaintiff argues that the ALJ erred because she did not offer any reason for rejecting Dr.
20  Wingate's opinion regarding Plaintiff's moderate limitations and failing to include these
21  limitations the RFC.[3] First, Plaintiff has not shown that ALJ rejected Dr. Wingate's opinion

22  ─────────────────
23  [3] Plaintiff also argues in his reply brief that the ALJ had no valid basis for redefining the term "moderate"
    as it was already defined in the form completed by Dr. Wingate. Pl. Reply Br. at 3. Plaintiff raises this
    argument for the first time in his reply and further fails to provide support for this assertion. *Zango, Inc. v.*
    *Kaspersky Lab, Inc.,* 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an

ORDER
PAGE - 6

1   regarding Plaintiff's moderate limitations; rather, the ALJ found that Dr. Wingate's assessment of

2   Plaintiff's mild to moderate limitations was "consistent with the overall medical evidence of

3   record, including his presentation and performance during the evaluation." (AR 32.) Further,

4   Plaintiff has not shown that the ALJ erred by failing to include the moderate limitations assessed

5   by Dr. Wingate in the RFC. "The ALJ is responsible for translating and incorporating clinical

6   findings into a succinct RFC," *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th

7   Cir. 2015), which may incorporate the medical opinions by assessing limitations entirely consistent

8   with, even if not identical to, limitations assessed by the physician. *Turner v. Comm'r of Social*

9   *Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, the ALJ's RFC assessment limited Plaintiff to

10  performing "simple routine repetitive tasks" in an environment with "only simple work-related

11  decisions" and "few, if any, workplace changes," "hav[ing] no contact with the public," and

12  "hav[ing] occasional superficial contact with coworkers that does not involve team tasks."

13  (AR 27.) These limitations are entirely consistent with Dr. Wingate's moderate limitations.

14  Therefore, the ALJ did not err in considering Dr. Wingate's assessment of moderate limitations.

15       Plaintiff further argues that there is no evidence that Dr. Wingate based her assessment of

16  marked limitations primarily upon Plaintiff's self-reports. "An ALJ may reject a treating

17  physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

18  properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).

19  Here, Dr. Wingate performed clinical tests of Plaintiff's orientation, memory, fund of knowledge,

20  concentration, abstract thought, and insight and judgment and found that Plaintiff performed at

21  normal limits in all categories except for insight and judgment. (AR 1318.) Because Dr. Wingate's

22

23  opening brief are waived."); *see also Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity). Therefore, Plaintiff has waived this argument and the Court otherwise declines to address it.

ORDER
PAGE - 7

clinical findings revealed that Plaintiff performed within normal limits in most areas, Dr. Wingate's assessment of marked limitations largely reflects Plaintiff's self-reports rather than the doctor's clinical findings. Additionally, the ALJ's finding that Dr. Wingate's assessment of marked limitations was largely based on Plaintiff's self-reports is supported by Dr. Harmon, who opined the same. Accordingly, Plaintiff does not show error in Plaintiff's consideration of Drs. Wingate assessment of marked limitations. The ALJ's findings have the support of substantial evidence.

B. Other Medical Evidence

Plaintiff identifies various medical evidence asserts that "[a]ll of the above-cited medical evidence supports [Plaintiff's] testimony, and it also provides longitudinal support for the opinions of Dr. Wingate and Dr. Harmon." Plf. Br. at 5–11. In reviewing a claim, the ALJ considers the medical opinions and prior administrative medical findings and "articulate[s] in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 416.920c(a)–(b). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court's review of the ALJ's decision is limited to determining whether the ALJ's decision is in accordance with the law and is supported by substantial evidence. *Penny*, 2 F.3d at 956; 42 U.S.C. § 405(g).

Plaintiff cites to various treatment notes and diagnostic findings in the record both before and after Plaintiff was incarcerated; however, Plaintiff does not assign specific error to the ALJ's consideration of this evidence nor does Plaintiff identify any conflicts in the record that the ALJ failed to resolve. Plaintiff's proffered citations, therefore, do not show error in the ALJ's consideration of the medical evidence in the record. *Carmickle*, 533 F.3d at 1161 n.2 (declining to

address issues not argued with any specificity); *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim. . . .").

Plaintiff further argues that "the ALJ largely failed to discuss or evaluate this evidence." Pl. Br. at 11. A review of the ALJ's decision reveals that the ALJ indeed reviewed the same evidence cited in Plaintiff's brief. Plaintiff offers a different interpretation of the medical evidence; however, the ALJ's interpretation is at least equally rational and not properly disturbed. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) ("[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld."). Accordingly, the Court finds Plaintiff's argument that the ALJ failed to consider the evidence cited by Plaintiff to be without merit.

C. Non-Examiner's Opinions

Plaintiff argues that the ALJ erred by finding the opinions of state agency consultants Dr. Michael Regets, Ph.D., and Dr. Christmas Covell, Ph.D., somewhat persuasive, asserting that the opinion of an examining physician such as Dr. Wingate "is generally entitled to more weight than the opinion of a non-examining physician" and that, to the extent that their opinions are inconsistent with Dr. Wingate's opinion, the non-examiners' opinions are "entitled to little if any weight." Pl. Br. at 11–12. Under the new regulations, the ALJ no longer weighs medical opinions; rather, the ALJ determines which opinions are most "persuasive," without giving any controlling weight to any medical opinion, including treating physicians. 20 C.F.R. § 416.920c(a)–(b). The Court, therefore, finds that the ALJ properly evaluated the persuasiveness of the state agency consultants' medical opinions according to the new regulations without giving controlling weight

1    to the treating physicians' opinions.

2        **2. Subjective Testimony**

3            Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of

4    a claimant's subjective symptom testimony[4] requires the provision of specific, clear, and

5    convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (citing *Molina v.*

6    *Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation*); *see also Lingenfelter v.*

7    *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ

8    must identify what testimony is not credible and what evidence undermines the claimant's

9    complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's

10   symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks

11   support in the medical evidence. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical

12   record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*,

13   400 F.3d 676, 681 (9th Cir. 5002) ("[L]ack of medical evidence cannot form the sole basis for

14   discounting pain testimony.").

15           Plaintiff alleges that he is unable to work because he hears voices and has hallucinations,

16   night terrors, severe anxiety, and paranoia. (AR 264.) Plaintiff also testified that he experiences

17   manic episodes every month or two, during which he has more energy, isolates, and does not sleep,

18   eat, or drink, and that he experiences depressive episodes, during which he isolates and sleeps all

19   day. (AR 69–70, 81, 86.) Plaintiff further testified that he gets confused easily, has trouble with

20   his eyesight, and has problems with concentration. (AR 64, 71, 73.) The ALJ found that Plaintiff's

21

22   _____

23   [4] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility"
     from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of
     character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

1    "severe medically determinable impairments could reasonably be expected to cause some of the

2    claimant's alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence,

3    and limiting effects of these symptoms are not consistent with the medical evidence and other

4    evidence in the record." (AR 28.)

5         Plaintiff argues that the ALJ erred by considering Plaintiff's mental stability during his

6    incarceration. Specifically, Plaintiff argues that "the fact that [Plaintiff] was stable *while*

7    *incarcerated* says nothing about his ability to work *while not incarcerated*." Pl. Br. at 12 (emphasis

8    in original). When evaluating a claim, the ALJ considers all evidence in the claimant's case record.

9    20 C.F.R. § 416.920(a)(3). When evaluating mental impairments, the ALJ considers "all relevant

10   evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional

11   limitation," including "how [the claimant's] functioning may be affected by factors including, but

12   not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id.*

13   at § 416.920a(c)(1). Here, the ALJ found that, contrary to Plaintiff's allegations, Plaintiff is capable

14   of sustaining work activity consistent with the RFC despite his impairments. (AR 30.) The ALJ

15   cited to specific evidence in the record that showed that, during his incarceration, Plaintiff's

16   "mental health symptoms were generally well managed with medication management and

17   therapy," that his "mental health symptoms and overall functioning continued to improve and

18   stabilize after his release from prison consistent with mental health treatment," and that Plaintiff's

19   performances during his evaluations "showed that he retained the mental ability to sustain simple

20   routine repetitive tasks." (AR 30.) The ALJ thus properly considered evidence in the medical

21   record, both during and after Plaintiff's incarceration, that contradicts Plaintiff's symptom

22   testimony, including evidence regarding Plaintiff's mental health treatment history. *See*

23   *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for

rejecting a claimant's subjective testimony."). The ALJ's findings are specific, clear, and convincing and have the support of substantial evidence.

Plaintiff further argues that the ALJ erred by finding that Plaintiff's mental health was stable during his incarceration by "failing to apprehend that 'stable' does not mean 'symptom-free.'" Pl. Br. at 12. Here, contrary to Plaintiff's assertion, the ALJ did not find that Plaintiff was symptom-free but that Plaintiff's "mental health symptoms were generally well managed with medication management and therapy." (AR 30.) Indeed, the ALJ found that "[t]he overall medical evidence of record establishes that the claimant has some functional limitations due to his severe mental impairments." (AR 30.) Although symptoms of a mental disorder may wax and wane, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Warre ex rel. E.T. IV v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with treatment are not disabling for the purpose of determining disability benefits). The ALJ, thus, properly considered evidence of Plaintiff's mental health stability while receiving treatment. Plaintiff has not shown error in the ALJ's assessment of the medical evidence.

Plaintiff asserts that the ALJ erred by finding that "the medical evidence does not support the degree of limitation alleged by claimant," arguing that the ALJ could not reject Plaintiff's testimony about the extent or severity of his symptoms based solely upon whether it is supported by objective evidence. An ALJ may not reject symptom testimony when it merely lacks support in the medical evidence. *See Carmickle*, 533 F.3d at 1161. Here, however, as described further below, the ALJ made specific findings that Plaintiff's testimony was contradicted by and inconsistent with the medical evidence. (AR 30–31.) The ALJ may discount symptom testimony where it is contradicted by or inconsistent with the medical record. *See Carmickle*, 533 F.3d at

1   1161; *Tommasetti*, 533 F.3d at 1039. Therefore, even if the ALJ erred by finding that Plaintiff's

2   allegations were not supported by the record, this error is harmless because the ALJ gave other

3   specific and legitimate reasons for discounting Plaintiff's testimony. *See Molina*, 674 F.3d at 1117

4   (an error is harmless if it is "inconsequential to the ultimate nondisability determination"); *Bray v.*

5   *Comm'r of Social Sec. Admin*, 554 F.3d 1219, 1227 (9th Cir. 2009) (harmless error where ALJ

6   presents other independent bases for discounting claimant's testimony).

7      Plaintiff next argues that the ALJ erred under *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th

8   Cir. 2015) when the ALJ found that "the medical evidence shows that [Plaintiff] is more than

9   capable of sustaining work activity consistent with the residual functional capacity despite his

10  impairments." (AR 30.) In *Brown-Hunter*, the Ninth Circuit Court of Appeals held that

> an ALJ does not provide specific, clear, and convincing reasons for
> rejecting a claimant's testimony by simply reciting the medical
> evidence in support of his or her residual functional capacity
> determination. To ensure that our review of the ALJ's credibility
> determination is meaningful, and that the claimant's testimony is not
> rejected arbitrarily, **we require the ALJ to specify which
> testimony she finds not credible, and then provide clear and
> convincing reasons, supported by evidence in the record, to
> support that credibility determination**.

16  *Brown-Hunter*, 806 F.3d at 489 (emphasis added). Here, the ALJ cited to specific evidence in the

17  record showing that Plaintiff's allegations regarding the degree of his limitation is contradicted by

18  and inconsistent with the medical record. (AR 30–32.) Specifically, the ALJ cited to evidence in

19  the record showing that Plaintiff's mental health and overall functioning showed improvement and

20  stabilization with medication management and therapy and evidence that Plaintiff cooperatively

21  engaged with mental health professionals, which the ALJ found was contrary to Plaintiff's alleged

22  degree of limitation. (AR 30.) Additionally, the ALJ cited to specific evidence in the record that

23  conflicted with Plaintiff's testimony regarding his trauma history, his ability to maintain focus and

ORDER
PAGE - 13

concentration, his compliance with his medication regimen, his isolating activities, his improvement with medication, his ability to perform daily activities and engage in social functioning, his marijuana use, and his criminal history. (AR 31–32.) The ALJ thus offered specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding the severity of his limitations based on inconsistencies in the record. *Tommasetti*, 533 F.3d at 1039 (an ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony). The ALJ's findings are supported by substantial evidence, and Plaintiff has not shown that the ALJ erred.

Plaintiff also cites to several findings in the ALJ's decision regarding the medical evidence and offers an alternative interpretation of this evidence, including evidence regarding Plaintiff's mental health treatment during his incarceration, Plaintiff's ability to engage with treatment providers, inconsistencies between Plaintiff's testimony and the medical evidence, and Plaintiff's ability to assist his sister with her animal boarding business. Pl. Br. at 13–15. The ALJ properly considers inconsistent statements in evaluating a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. Plaintiff offers a different interpretation of the medical record and evidence of his activities. However, the ALJ's interpretation is at least equally rational and not properly disturbed. *Morgan*, 169 F.3d at 601 ("[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.").

Finally, Plaintiff identifies various evidence in the record, which Plaintiff avers the ALJ improperly rejected. *Id.* at 15–17. In determining disability, the ALJ "consider[s] all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R § 416.929(a). Here, the ALJ properly found that Plaintiff's subjective testimony about the severity of his limitations unsupported by the objective medical evidence. "While subjective pain

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 416.929(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence."). As described above, Plaintiff has not shown that the ALJ improperly rejected Plaintiff's testimony. Plaintiff's recitation of Plaintiff's testimony, therefore, does not deprive the ALJ's decision of substantial evidence.

**3.  RFC**

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. *See* 20 C.F.R. § 416.945; SSR 96-8p. The RFC is the most a claimant can do considering his limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 416.945(e); SSR 96-8p. Plaintiff argues that the ALJ improperly determined Plaintiff's RFC because it does not include all of the limitations assessed by Dr. Wingate or the limitations described by Plaintiff. Specifically, Plaintiff argues that the RFC failed to include that Plaintiff "is unable to work with co-workers or supervisors and that he is unable to attend any competitive job for a full forty-hour workweek." Pl. Br. at 18.

As described in the previous sections, the ALJ properly considered Dr. Wingate's opinion and Plaintiff's symptom testimony. Substantial evidence supports the ALJ's rejection of Dr.

Wingate's assessment of marked limitations as well as Plaintiff's testimony regarding the severity of his limitations that the ALJ found to be inconsistent with or contradicted by the medical evidence. Limitations from properly discounted evidence does not need to be included in the RFC or the VE hypothetical. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005). Therefore, Plaintiff's argument fails to establish error because the ALJ assessed the RFC according to her proper evaluation of Dr. Wingate's opinion and Plaintiff's testimony.

Nevertheless, the RFC accounts for the stricter limitations in Dr. Wingate's opinion and Plaintiff's testimony. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. Accordingly, an RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician. *Turner*, 613 F.3d at 1223 (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Here, the ALJ limited Plaintiff "to work activity involving no fast-paced production demands, only simple work-related decisions, and only minimal workplace changes to account for Plaintiff's mental health symptoms." (AR 27, 30.) The ALJ "also limited him to work activity involving no public contact and only occasional superficial contact with co-workers to account for his social difficulties." (AR 27, 30.) Therefore, even if the ALJ erred in evaluating Dr. Wingate's opinion and Plaintiff's testimony, this error would be harmless because the RFC is consistent with the stricter limitations in Dr. Wingate's opinion and Plaintiff's testimony.

1

## **CONCLUSION**

2     For the reasons set forth above, this matter is AFFIRMED.

3     DATED this 3rd day of September, 2021.

4

5

6                            MARY ALICE THEILER
                           United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER
PAGE - 17